NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LARGAN PRECISION CO., LTD.,**
*Plaintiff-Appellant*

**v.**

**GENIUS ELECTRONIC OPTICAL CO., LTD.,**
*Defendant-Appellee*

---

2015-1695

---

Appeal from the United States District Court for the Northern District of California in No. 3:13-cv-02502-JD, Judge James Donato.

---

Decided:  April 27, 2016

---

DONALD ROBERT DUNNER, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by ANDREW JOSEPH VANCE; GARY MA, MING-TAO YANG, Palo Alto, CA.

DAVID E. SIPIORA, Kilpatrick Townsend & Stockton LLP, Denver, CO, argued for defendant-appellee. Also represented by JEFFREY M. CONNOR, KENNETH CHANG,

MATTHEW CHRISTIAN HOLOHAN, KRISTOPHER L. REED, LAURA K. MULLENDORE.

————————————

Before LOURIE, MOORE, and CHEN, *Circuit Judges.*

MOORE, *Circuit Judge.*

Largan Precision Co., Ltd. ("Largan") appeals a judgment of non-infringement of United States Patent Nos. 7,826,151; 7,864,454; 8,233,224; 8,310,768; and 8,395,691 (the "asserted patents") by the U.S. District Court for the Northern District of California. The asserted patents are directed to various aspects of camera lenses. Because the district court correctly held that no reasonable jury could find induced infringement, we *affirm*.

## BACKGROUND

Largan and Genius Electronic Optical Co., Ltd. ("Genius") are both Taiwanese companies that supply camera lenses for various Apple phones and tablets. Largan and Genius represent the first link in Apple's four-part supply chain. Genius manufactures lenses in Asia, and then sells its lenses to Asian module integrators. The module integrators build cameras, and then sell the finished cameras to system integrators, which are also located in Asia. The system integrators incorporate the cameras into phones and tablets, which are then sent to Apple for sale to end users worldwide. With one minor exception, Largan and Genius are the only two lens suppliers for Apple products at issue in this case. Apple does not track where either supplier's lenses are sold.

Largan sued Genius for infringement over eight models of Genius lenses. At issue in this appeal are Largan's allegations of induced infringement. Largan alleged Genius induced Apple to infringe the asserted patents by placing lenses into Apple's supply chain that were ultimately incorporated in Apple products sold in the United

States.  Genius did not dispute that its lenses met every limitation of every asserted claim.  Rather, Genius argued there was no induced infringement because there was no evidence of direct infringement by Apple.  The district court granted summary judgment of no induced infringement, and Largan appealed to this court.  We have jurisdiction under 35 U.S.C. § 1295(a)(1).

## DISCUSSION

We review summary judgment decisions de novo under Ninth Circuit law.  *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1344 (Fed. Cir. 2013) (citing *Greater Yellowstone Coal. v. Lewis*, 628 F.3d 1143, 1148 (9th Cir. 2010)).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  At the summary judgment stage, we credit the non-movant's evidence and "draw all justifiable inferences in its favor." *Brilliant Instruments*, 707 F.3d at 1344.

Induced infringement requires proof of direct infringement by some party. *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033 (Fed. Cir. 2002).  To prove induced infringement, a patentee must show "the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (quoting *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014)).  The knowledge requirement "may be satisfied by a showing of actual knowledge or willful blindness." *Id.* at 1372–73.  Willful blindness requires the alleged inducer to (1) subjectively believe there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011).

We hold that the district court properly granted summary judgment of no induced infringement because Largan failed to offer evidence of direct infringement by Apple. Largan did not offer evidence that any Apple product sold in the United States contained an accused Genius lens. Instead, Largan only presented evidence that Genius lenses are incorporated in some Apple products manufactured in Asia and that some Apple products are sold in the United States. Given the evidence of record, which includes the volume of Largan and Genius lenses supplied for Apple's worldwide distribution of products, Largan supplies such a large volume of lenses in the relevant Apple products that all of those products sold in the United States could contain Largan lenses.[1]

Largan argues it does not need to identify specific sales in the United States because "Apple's supply chain randomly selects between Genius's and Largan's lenses for shipments to the U.S." Appellant's Br. 33. It argues because the supply chain randomly selects lenses, a reasonable jury could find the proportion of Apple phones and tablets sold in the United States with Genius lenses is equal to the proportion of Apple phones and tablets sold worldwide with Genius lenses. Therefore, it argues a reasonable jury could find direct infringement by Apple.

Circumstantial evidence can be sufficient to prove infringement. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318–19 (Fed. Cir. 2009). But it is insufficient here because Largan's theory requires Apple's supply chain selection to be random, and Largan failed to pro-

---

[1] The district court denied summary judgment on products for which the record demonstrated there was a question of fact regarding whether Largan made enough lenses to cover all United States sales. *Largan Precision Co. v. Genius Elec. Optical Co.*, 86 F. Supp. 3d 1105, 1120 (N.D. Cal. 2015).

duce any evidence that it is random. Largan only presented evidence obtained from Genius and Apple, the first and fourth steps in Apple's supply chain; it never presented evidence from the module integrators (step two) or the system integrators (step three). Based on the record before us, we cannot infer that the module integrators randomly select lenses or that the system integrators randomly select cameras because there is no evidence about how the module and system integrators operate.

Largan attempts to establish randomness through testimony from Apple, but the testimony it cites does not allow the inference that the supply chain is random. Apple's corporate representative testified that Apple does not track where a given supplier's lenses are sold. This testimony alone does not prove randomness in the supply chain. Evidence that Apple does not track where a supplier's lenses are sold is not equivalent to evidence that Apple suppliers treat Largan and Genius lenses interchangeably. In the light most favorable to Largan, the evidence shows only that Apple does not place requirements on its suppliers regarding lenses. It says nothing about whether the module integrators (step two) or the system integrators (step three) randomly select Genius or Largan lenses for the Apple products destined for the United States. Largan has furnished no evidence that the module integrators randomly select lenses or that the system integrators randomly select cameras by proving Apple did not place affirmative requirements on its suppliers' selections.

Largan cites *O2 Micro* as an example of our court affirming a finding of induced infringement based on circumstantial evidence of sales in the United States. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923 (Fed. Cir. 2011). As we discussed in *O2 Micro*, a patentee may rely on circumstantial evidence to show that a defendant's foreign-manufactured components are incorporated into products sold in the United States by a

third party. *Id*. at 929. But *O2 Micro* is ultimately distinguishable from the present case because there was some evidence of United States sales—the parties stipulated that some of the accused components were sold in the United States. *Id*. at 927. Conversely, there is no evidence in this record that a single Apple product sold in the United States contained an accused Genius lens.[2] And Largan did not present any evidence from the supply chain to establish what process the module integrators and system integrators used to select lenses in products destined for the United States. Largan presented no evidence of a single United States sale or evidence of randomness from the module integrators or system integrators.

Largan also tries to prove United States sales with evidence that Genius does not actively prevent United States sales. It relies on testimony from Genius employees stating Genius has never instructed Apple not to sell its lenses in the United States. This too provides no insight into the behavior of the module integrators or system integrators. That Genius does not restrict where Apple sells its products does not indicate whether the system integrators ship Apple products with Genius lenses to the United States.

---

[2]     Largan offers evidence that Genius was the sole supplier for certain Apple products during a specific period of time in an effort to overcome its failure of proof. *See* Appellant's Br. at 39. However, as noted *supra* note 1, the district court denied summary judgment with respect to these products. As such, Largan presented no evidence that any Apple product sold in the United States *at issue in this appeal* contained a Genius lens.

CONCLUSION

Largan has failed to present sufficient evidence to establish a prima facie showing of direct infringement by Apple. Because induced infringement requires proof of underlying direct infringement, no reasonable jury could find Genius liable for induced infringement.[3] For the foregoing reasons, the judgment is *affirmed*.

**AFFIRMED**

COSTS

No Costs.

---

[3] Because we hold that no reasonable jury could find underlying direct infringement, we do not reach the issue of Genius's alleged knowledge of or willful blindness to Apple's alleged direct infringement.